***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission hereby affirms with minor modifications the Opinion and Award of Deputy Commissioner Deluca.
 *********** RULING
On August 15, 2008 Deputy Commissioner Deluca conducted a teleconference with counsel for defendants and counsel for Plaintiff concerning the need of Plaintiff to attend the hearing in Goldsboro on August 25, 2008. Defendants objected to proceeding with the hearing if Plaintiff was not going to attend the hearing as defendants desired the opportunity to examine or *Page 2 
cross-examine Plaintiff. Plaintiff's counsel indicated that Plaintiff had not been subpoenaed and was located in Mexico and it would be burdensome for him to come to North Carolina for a hearing; however, Plaintiff's counsel offered to make Plaintiff available for a deposition or telephonic deposition should defendants wish to take his testimony. Deputy Commissioner Deluca overruled defendants' objection and allowed the hearing to go forward as scheduled on August 25, 2008 and further allowed the parties to depose the Plaintiff should they so desire.
 ***********
The only issue for determination at this time relates to the proper calculation of Plaintiff's average weekly wage under N.C. Gen. Stat. § 97-2(5).
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. On September 4, 2007, an employee-employer relationship existed between Plaintiff and Defendant-Employer.
2. On September 4, 2007, Farm Bureau Mutual Insurance Company was the carrier on the risk for Defendant-Employer.
3. It is stipulated that all parties have been correctly designated and that there is no question as to the misjoinder or nonjoinder of parties.
4. On September 4, 2007, Plaintiff was employed by Defendant-Employer as a seasonal H2A worker.
5. On September 4, 2007, Plaintiff sustained a compensable injury by accident. *Page 3 
6. Plaintiff received weekly indemnity benefits in the amount of $252.57 from September 5, 2007 through approximately November 21, 2007. Since approximately November 21, 2007, Plaintiff has received weekly indemnity benefits in the amount of $60.72, with said benefits presently continuing.
7. At the hearing before the deputy commissioner, the parties stipulated into evidence the following documents: (1) Pre-Trial Agreement as Stipulated Exhibit 1; (2) Plaintiff's wage records and wage records for a similar employee as Stipulated Exhibit 2; (3) Plaintiff's employment contract with the North Carolina Grower's Association as Stipulated Exhibit 3; and (4) all Industrial Commission forms filed in this matter as Stipulated Exhibit 4.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, Plaintiff was a 22 year-old man from Mexico.
2. Plaintiff was jointly employed by Lynn Carr Farms, the North Carolina Growers Association (hereinafter "N.C.G.A"), and all of the members of the N.C.G.A.
3. Defendant-Employer, Lynn Carr Farms, is engaged in the business of farming. Defendant-Employer grows, among other crops, tobacco.
4. As required by the North Carolina Workers' Compensation Act, Defendant-Employer applied for and obtained workers' compensation insurance from Defendant-Insurer, which was in effect on September 4, 2007. Specifically, the policy in effect on September 4, 2007 came into effect on December 1, 2006 and remained in effect for all time periods relevant *Page 4 
to this matter. The workers' compensation premium for Defendant-Employer was $5,605 for 2007.
5. Pursuant to North Carolina Department of Insurance Regulations, the insurance premium charged by Defendant-Insurer was based, in part, upon gross wages of $123,212.06 paid to Defendant-Employer's employees during the policy period (December 1, 2006 through December 1, 2007). Of the $123,212.06 paid to Defendant-Employer's employees during the policy period, $2,233.00 reportedly consisted of wages paid to Plaintiff.
6. The insurance regulations applicable to workers' compensation premiums require that premiums be calculated using the actual wages paid to employees during the policy period. Based upon the $123,212.06 wages paid by Defendant-Employer during the policy period, Defendant-Insurer charged Defendant-Employer a premium of $5,605.00 for workers' compensation coverage.
7. Per insurance regulations, Defendant-Insurer was prohibited from charging any higher premium. Defendant-Insurer was not allowed to charge a larger premium based upon a wage figure of its own choosing because insurance regulations require premium calculations to be based upon actual wages paid during the policy period.
8. Mr. Carr of Lynn Carr Farms used the N.C.G.A. to locate and legally hire Plaintiff to work for Lynn Carr Farms because Mr. Carr would otherwise be unable to locate enough local laborers to plant and harvest his crops.
9. Workers such as Plaintiff are brought to work under a joint employment contract because it is beneficial to the various growers who use the H-2A program through the N.C.G.A. The benefits of the joint employment contract to farms such as Lynn Carr Farms are numerous. There is a complicated and extended labor certification process which is required to be *Page 5 
completed before a foreign farm worker may be brought in to work on a farm here in North Carolina. The labor certification process would require the farmer to not only locate workers in Mexico, but to interview potential workers already in the United States. Most farm operations are too busy to go through the labor certification process. By using the joint employer approach offered by the N.C.G.A., Lynn Carr Farms avoids having to perform the labor certification process. In addition, Lynn Carr Farms and other farms avoid the complexities of obtaining a visa for each foreign laborer. The N.C.G.A. will complete the necessary paperwork to obtain a joint employer visa from the U.S. Department of Justice and U.S. State Department. The N.C.G.A will also train the foreign workers in pesticide safety and other farm safety to comply with worker protection standards applicable to farms such as Lynn Carr Farms. The N.C.G.A. completes Federal Form I-9s for Lynn Carr Farms and other growers. This type of use of the joint employment contract provides flexibility to ensure farms such as Lynn Carr Farms will have enough workers.
10. In 2007, the N.C.G.A. brought in foreign farm laborers to work starting on February 15, 2007 and ending on December 15, 2007, a period of 43.285 weeks.
11. The N.C.G.A. joint employment contract allowed an employee such as Mr. Periañez to start working on February 15, 2007 on one farm and continue working on various farms through December 15, 2007. Even if an employee's visa expired on November 5, 2007, the N.C.G.A. would have been able to get an extension of the visa so that the employee could work through December 15, 2007. The N.C.G.A. frequently obtains visa extensions for foreign workers. An employee such as Plaintiff could have extended his visa and worked through December 15, 2007 and then return again on February 15, 2008. *Page 6 
12. Prior to 2007, Plaintiff had never worked with Lynn Carr Farms, the N.C.G.A., or any other farm in the United States.
13. On or about June 13, 2007, Plaintiff's visa allowing him to legally work in the United States came into effect. The visa expired on November 12, 2007.
14. Plaintiff started working as a farm laborer under the N.C.G.A. joint employment contract on approximately June 20, 2007. Plaintiff's first farm assignment was with a farm in Granville County from June 20, 2007 to July 20, 2007 and was then assigned to Lynn Carr Farms to work starting on approximately July 25, 2007.
15. During his employment with Defendant-Employer, Plaintiff was to be compensated at the rate of $9.02 per hour with a guaranteed workweek of approximately 40 hours. He did not work overtime.
16. The joint employment contract in this matter allowed Plaintiff to work not only for Lynn Carr Farms, but also for any other farm that was a member of the N.C.G.A. Thus, although Lynn Carr Farms may have only planned for Plaintiff to work for Lynn Carr Farms through the end of the tobacco season, their contract with the N.C.G.A. allowed Plaintiff to work on other farms that were N.C.G.A. members beyond the tobacco season. Plaintiff could have extended his visa and worked through December 15, 2007 and then return again in February 15, 2008.
17. On September 4, 2007, Plaintiff injured his right foot while harvesting tobacco. Thereafter, Defendants immediately accepted Plaintiff's claim as compensable and began paying him benefits, via a Form 60, at the rate of $252.57 per week. At the time his claim was initially accepted as compensable, it was specifically noted on the Form 60 that his wages were subject to verification. *Page 7 
18. Lynn Carr Farms produced the following limited wage information for Plaintiff:
 • Week ending July 26, 2007: $103.73
 • Week ending August 2, 2007: $414.92
 • Week ending August 9, 2007: $322.47
 • Week ending August 16, 2007: $320.21
 • Week ending August 23, 2007: $403.65
 • Week ending August 30, 2007: $421.69
 • Total Wages: $1,986.87
19. The total days worked by Plaintiff with Lynn Carr Farms from July 25 through August 30, 2007 is 37 days or 5.29 weeks.
20. The wage information for work done by Plaintiff after August 30, 2007 was not provided by Lynn Carr Farms. A Form 22 Wage Chart for Plaintiff was not prepared by Defendants.
21. Dividing the total wages of $1,986.87 by 5.29 weeks results in an average weekly wage of $375.83.
22. Ms. Shelley Kiger, the adjuster for the carrier herein initially determined Plaintiff's average weekly wage to be $378.84. Ms. Kiger subsequently calculated an average weekly wage of $91.07 using the wage figure of $4,735.54 paid by Lynn Carr Farms to Valentin Martinez from July 20, 2007 through October 11, 2007 and dividing that figure by 52 weeks.
23. The average weekly wage of $91.07 used by Defendants is unfair to Plaintiff. In reaching the $91.07 figure, defendants have failed to consider wages which Plaintiff earned or would have earned with other farms which were expressly considered joint employers under the *Page 8 
terms of the employment contract entered into among Plaintiff, Lynn Carr Farms, the N.C.G.A. and all other farm members of the N.C.G.A.
24. In determining what constitutes a fair average weekly wage for both Lynn Carr Farms and the Plaintiff, it is necessary to consider the wages Plaintiff earned or could have earned with, not only Lynn Carr Farms, but also the wages Plaintiff earned or could have earned with other farms that were also joint employers of Plaintiff as part of the employment contract of Lynn Carr Farms, the N.C.G.A. and Plaintiff.
25. The first and second methods of calculating Plaintiff's average weekly wage under N.C. Gen. Stat. § 97-2(5) are not applicable to this case as there is no evidence that Plaintiff worked for Lynn Carr Farms and all other joint employers for a period of 52 weeks.
26. The third method of calculating Plaintiff's average weekly wage under N.C. Gen. Stat. § 97-2(5) requires the Industrial Commission to total the wages earned by Plaintiff under the terms of his employment contract with Lynn Carr Farms, the N.C.G.A., and all other joint employers. The only wage information in the record indicates Plaintiff earned wages of $1,986.87 in 5.29 weeks. Thus, under the third method, Plaintiff's average weekly wage would be $375.83.
27. The use of the third method of calculating Plaintiff's average weekly wage under N.C. Gen. Stat. § 97-2(5) produces an average weekly wage of $375.83 which is fair to both Lynn Carr Farms and Plaintiff.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 9 
1. On September 4, 2007, Plaintiff sustained a compensable injury by accident in the course and scope of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. The first and second methods of calculating Plaintiff's average weekly wage under N.C. Gen. Stat. § 97-2(5) are not applicable to this case as there is no evidence that Plaintiff worked for Lynn Carr Farms and all other joint employers for a period of 52 weeks. The third method of calculating Plaintiff's average weekly wage under N.C. Gen. Stat. § 97-2(5) requires the Industrial Commission to total the wages earned by Plaintiff under the terms of his employment contract with Lynn Carr Farms, the N.C.G.A., and all other joint employers. The only wage information in the record indicates Plaintiff earned wages of $1,986.87 in 5.29 weeks. Thus, under the third method, Plaintiff's average weekly wage would be $375.83.
3. The use of the third method of calculating Plaintiff's average weekly wage under N.C. Gen. Stat. § 97-2(5) produces an average weekly wage of $375.83 which is fair to Plaintiff and Defendants. Therefore, Plaintiff's average weekly wage is $375.83, yielding a weekly compensation rate of $250.56. N.C. Gen. Stat. § 97-2(5). N.C. Gen. Stat. § 97-29.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay Plaintiff total disability compensation benefits at the rate of $250.56 per week until further order of the Industrial Commission. All past benefits which have accrued but not been paid shall be paid in a lump sum.
2. Defendants shall bear the costs.
This the 12th day of August 2009. *Page 10 
S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ DANNY L. McDONALD COMMISSIONER *Page 1